UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

WILLIAM TED HOLLIDAY,
     Plaintiff,

vs.                             Case No.: 3:19cv4945/RV/EMT

MARK S. INCH, et al.,
     Defendants.
_____/

## <u>REPORT AND RECOMMENDATION</u>

Plaintiff, a non-prisoner proceeding pro se and in forma pauperis (IFP), initiated this action on December 16, 2019, by filing a civil rights complaint pursuant to 42 U.S.C. § 1983 (ECF No. 1).[1]   Now before the court is Plaintiff's Third Amended Complaint (ECF No. 21).

Because Plaintiff is proceeding IFP, the court must dismiss the case if satisfied the action is "(i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."   28 U.S.C. § 1915(e)(2)(B). [2]   With respect to subsection

---

[1] Although Plaintiff was not incarcerated when he initiated this action, his claims arise from events that occurred during his incarceration in numerous jails and prisons in Florida.

[2] Section 1915(e)(2)(B) applies equally to prisoner and non-prisoner IFP cases.  *See, e.g., Newsome v. EEOC*, 301 F.3d 227, 231–33 (5th Cir. 2002) (affirming dismissal of non-prisoner claims for frivolity and failure to state a claim under 28 U.S.C. § 1915(e)(2)(B)(i) & (ii)); *Cieszkowska v. Gray Line N.Y.*, 295 F.3d 204, 205–06 (2d Cir. 2002) (affirming dismissal of non-

1915(e)(2)(B)(i), a case may be dismissed as malicious or "abus[ive] of the judicial process" for failure to follow court orders, "which the Eleventh Circuit has held to be a 'strike-worthy' form of dismissal under [the three-strikes provision of] § 1915(g)." *Henderson v. Wright*, No. CV 312-030, 2012 WL 1790319, at *2 n.5 (S.D. Ga. Apr. 18, 2012), *report and recommendation adopted*, No. CV 312-030, 2012 WL 1790310 (S.D. Ga. May 15, 2012) (citing *Rivera v. Allin*, 144 F.3d 719, 731 (11th Cir. 1998), *abrogated on other grounds by Jones v. Bock*, 549 U.S. 199 (2007), and *Malautea v. Suzuki Motor Co.*, 987 F.2d 1536, 1544 (11th Cir. 1993) (characterizing failure to comply with court orders as "abuse of the judicial process")).

Dismissals for failure to state a claim under subsection 1915(e)(2)(B)(ii) are governed by the same standard as Federal Rule of Civil Procedure 12(b)(6). *Leal v. Ga. Dep't of Corr.*, 254 F.3d 1276, 1278–79 (11th Cir. 2001). The court must view as true all facts alleged in the complaint and liberally construe pro se pleadings.

---

prisoner IFP case for failure to state a claim pursuant to § 1915(e)(2)); *Barren v. Harrington*, 152 F.3d 1193 (9th Cir. 1998) (affirming dismissal of § 1983 action for failure to state a claim by non-prisoner, a former detainee, against state law enforcement personnel); *Hutchinson v. Spink*, 126 F.3d 895, 899 (7th Cir. 1997) (§ 1915, as amended, changed cases brought by prisoners and in some respects for all indigent litigants); *see also Mazzaglia v. New Hampshire*, No. 99-1997, 2000 WL 979971, at *1 (1st Cir. June 23, 2000) ("[i]f plaintiff was a prisoner, then 28 U.S.C. § 1915A would have governed; if he was not, then § 1915(e)(2)(B) would have applied . . . . The same analysis would have been involved in either case."); *McLean v. Caldwell County Sheriff's Dep't*, No. 99-2005, 1999 WL 796420, at *1 n.1 (4th Cir. Oct. 16, 1999) (noting same).

*Brown v. Johnson*, 387 F.3d 1344, 1347, 1350 (11th Cir. 2004).    The complaint is viewed in the light most favorable to the plaintiff, and the plaintiff's well-pleaded facts are accepted as true.    *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1057 (11th Cir. 2007).    A complaint considered under the standards of a "Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," but a plaintiff is "obligat[ed] to provide the 'grounds' of his 'entitle[ment] to relief,'" which "requires more than labels and conclusions"; similarly, "a formulaic recitation of the elements of a cause of action will not do."    *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).    The complaint may be dismissed if the facts as pleaded do not state a claim to relief that is plausible on its face.    *See id.*, 550 U.S. at 570 (retiring the negatively-glossed "no set of facts" language previously used to describe the motion to dismiss standard and determining that because plaintiffs had "not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed" for failure to state a claim).

A complaint is also subject to dismissal "when its allegations, on their face, show that an affirmative defense bars recovery on the claim."    *Douglas v. Yates*, 535 F.3d 1316, 1321 (11th Cir. 2008) (internal quotation marks omitted).    The statute of limitations is an affirmative defense.    *Clark v. State of Ga. Pardons and Paroles Bd.*, 915 F.2d 636, 640 n.2 (11th Cir. 1990) ("The expiration of the statute

of limitations is an affirmative defense the existence of which warrants a dismissal as frivolous.") (citation omitted).

I.    DISCUSSION

    A.    Maliciousness and Abuse of the Judicial Process

Plaintiff initiated this action on December 16, 2019, by filing a thirteen-page complaint with more than seventy pages of attachments (ECF No. 1).   The complaint addresses a variety of alleged wrongs, occurring in Detroit, Michigan, and at numerous jails and prisons in Florida (e.g., Escambia County Jail and Florida Department of Corrections (FDOC) institutions in Charlotte, Suwanee, Franklin, Gulf, and Escambia Counties) (*id*. at 7).   The attachments to Plaintiff's complaint include copies of filings in other cases, legal arguments, caselaw citations, and, evidently, facts in support of his claims (ECF No. 1 at 8–85).   Plaintiff thus exceeded the page limit, included unrelated claims and facts in one action, and failed to relate his claims/arguments to the facts, despite the following instructions on the court-approved complaint form:

> **V.    STATEMENT OF FACTS:**
>
> State briefly the FACTS of this case. Describe how <u>each</u> Defendant was involved and what each person did or did not do which gives rise to your claim.   In describing what happened, state the names of persons involved, dates, and places.   <u>Do not make any legal arguments or cite to any cases or statutes</u>.   You must set forth separate factual allegations in separately numbered paragraphs.   You may make copies of this page if necessary to

supply all the facts. Barring extraordinary circumstances, no more than five (5) additional pages should be attached.   **(If there are facts which are not related to this same basic incident or issue, they must be addressed in a separate civil rights complaint.)**

\* \* \*

### VI.    STATEMENT OF CLAIMS:

State what rights under the Constitution, laws, or treaties of the United States you claim have been violated.   Be specific.   Number each separate claim and relate it to the facts alleged in Section V.   **If claims are not related to the same basic incident or issue, they must be addressed in a separate civil rights complaint.**

(ECF No. 1 at 5, 7) (emphases in original).

Plaintiff also did not pay the filing fee or file a motion for leave to proceed IFP.   Therefore, on December 19, 2019, the court entered an order directing Plaintiff to either pay the filing fee or seek leave to proceed IFP, the latter of which Plaintiff did on January 2, 2020 (ECF Nos. 3, 4).   On January 6, 2020, the court granted Plaintiff leave to proceed IFP (ECF Nos. 5, 7, 8).   Plaintiff's original complaint was not screened pursuant to § 1915(e)(2)(B) because in early February, before the court had an opportunity to screen it, Plaintiff sought and received leave to file an amended complaint (ECF Nos. 7, 8).

Plaintiff filed an Amended Complaint on March 11, 2020 (ECF No. 10).   As before, Plaintiff failed to comply with the clear instructions on the complaint form— Plaintiff attached nearly twenty pages of exhibits to the complaint, and again

included arguments/claims in the attachments and failed to relate them to the facts

set forth in the body of the complaint.   Notwithstanding this deficiency, the court

screened the Amended Complaint and, in a lengthy (21-page) order issued October

7, 2020, advised Plaintiff he had failed to state a viable claim for relief against the

Defendants, advised Plaintiff of the law applicable to his claims, and provided

Plaintiff an opportunity to state an actionable claim by filing a second amended

complaint (ECF No. 14 ("order to amend")).   In pertinent part, the court instructed

Plaintiff as follows in its order to amend:

> Plaintiff's complaint appears to be based on multiple events that occurred at different locations and involved different Defendants. Plaintiff is advised that permissive joinder allows multiple defendants to be joined in one action *only if* the right to relief arises "out of the same transaction, occurrence, or series of transactions or occurrences" and "any question of law or fact common to all defendants will arise in the action."   Fed. R. Civ. P. 20(a)(2).   The Court, sua sponte, "may at any time, on just terms, add or drop a party" who is misjoined.   Fed. R. Civ. P. 21.   **Plaintiff must prepare any amended complaint accordingly, limiting his claims to the same transaction, occurrence, or series of transactions or occurrences**.

> * * *

> At least some of Plaintiff's claims appear to be time-barred. "Claims brought pursuant to 42 U.S.C. § 1983 are subject to the [four-year] statute of limitations period governing personal injury actions in [Florida]." . . .   The only date Plaintiff sets forth in his complaint is May 6, 2011.   Considering Plaintiff initiated this action on December 16, 2019, more than eight and one-half years later, it appears at least some of Plaintiff's claims are time-barred.   **Such claims should be omitted from any subsequent complaint**.

\* \* \*

  To file a second amended complaint, Plaintiff must completely fill out a new civil rights complaint form, marking it "Second Amended Complaint."  **<u>Plaintiff must limit his allegations to claims related to the same basic incident or issue</u>** <u>and name as Defendants only those persons who are responsible for the alleged constitutional violations.</u> . . . .

\* \* \*

  Plaintiff's failure to comply with this order as instructed **will** result in a recommendation that this case be dismissed.

(ECF No. 14 at 6, 7, 19, 21) (bolded emphases added).

On November 30, 2020, Plaintiff filed a (19-page) Second Amended Complaint (ECF No. 17) and, within a few days, filed a separate (10-page) document containing supporting facts and materials (ECF No. 18). Because piecemeal pleading is not allowed, the court directed Plaintiff to file a third amended complaint (ECF No. 19), which he did (ECF No. 21).

Plaintiff names thirty-three Defendants in the Third Amended Complaint, the operative pleading (hereafter, "Complaint"), including the State of Florida; Mark S. Inch, Secretary of the FDOC; J. Adams, Assistant Secretary of the FDOC; various FDOC classification officers, identified as "subordinates" of Secretary Inch; various FDOC correctional officers at Charlotte Correctional Institution (CCI); other FDOC employees, such as "mailroom/legal pickup" personnel at CCI, Gulf Correctional

Institution (GCI), Holmes Correctional Institution (HCI), and Suwannee Correctional Institution (SCI); David Morgan, former Escambia County Sheriff, as "Chief Jailer [for the] Escambia County Jail," and several employees of the Jail and/or the Escambia County Sheriff's Office (ECSO); Bill Cameron, as "Chief Jailer" of the Charlotte County Jail, and employees of that Jail and/or the Charlotte County Sherriff's Office (CCSO); two inmates; the Florida Sheriff's Association (FSA) and/or an officer with the FSA; and a state prosecutor and investigator employed by the State Attorney's Office for the First Judicial Circuit of Florida (*see* ECF No. 21 at 1–9).   Plaintiff asserts numerous claims in the lengthy Complaint, which are factually, temporally, geographically, and legally distinct from one another; plus, no claim appears to pertain to all Defendants (and most are clearly time-barred).

Although the Federal Rules of Civil Procedure permit a party asserting a claim to join "as independent or alternative claims, as many claims as it has against an opposing party," Fed. R. Civ. P. 18(a), they do not permit a plaintiff to join in one action unrelated claims against unrelated defendants, as Plaintiff has done here. *See George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) ("[u]nrelated claims against different defendants belong in different suits," in part "to prevent the sort of morass that this 50–claim, 24–defendant suit produced"); *Graves v. Gualtieri*, No.

8:20cv2241/WFJ/AEP, 2021 WL 2377091, at *1 (M.D. Fla. June 10, 2021) (quoting

*George*, 507 F.3d at 607, and dismissing claims without prejudice to plaintiff filing

an amended complaint "that does not improperly join parties and unrelated claims

in a single cause of action").   The instant Complaint is clearly subject to dismissal

due to improper joinder.

The Complaint is also subject to dismissal as malicious and abusive of the

judicial process due to Plaintiff's failure to follow this court's instructions.   As

noted above, Plaintiff has again failed to follow the instructions on the complaint

form.   The Statement of Facts section of Plaintiff's Complaint spans twenty-two

pages (ECF No. 21 at 12–33) and thus far exceeds the page limit—as did his prior

complaints, some to a greater extent than others.   Additionally, Plaintiff was

specifically instructed in this court's order to amend that "he should not file exhibits

as evidentiary support for his complaint" (ECF No. 14 at 20).   Despite this clear

directive, Plaintiff attached more than 120 pages of exhibits to the Complaint (*see*

ECF Nos. 21-1–21-5).   He also ignored the court's directives in the order to amend

regarding improper joinder and time-barred claims, among others.

Based on the foregoing, the undersigned concludes that this action is subject

to dismissal as malicious and abusive of the judicial process under 28 U.S.C.

§ 1915(e)(2)(B)(i).    Alternatively, the Complaint is subject to dismissal on the merits.[3]

B.    Failure to State a Claim on Which Relief May be Granted

As an initial matter, the court notes it has not scrutinized the voluminous exhibits to Plaintiff's Complaint, and it will neither divine claims on Plaintiff's behalf based on those exhibits—which were filed in contravention of this court's order—nor consider them (save one) in analyzing Plaintiff's claims.    That said, the court has *perused* the exhibits and notes that many appear to have been submitted merely to corroborate factual allegations in the Complaint regarding Plaintiff's submission of various grievances, complaints, and letters addressing events central to his claims—and perhaps the dates and content thereof.

1.    Factual Allegations of Complaint
        (grouped for organizational purposes)

(a)    Taylor Correctional Institution (TCI).

Plaintiff's claims against TCI officials relate to his incarceration at TCI in **2005**, fourteen years before he filed this action.    Plaintiff states he was transferred

---

[3]  Generally, "a district court must grant a plaintiff at least one opportunity to amend [his] claims before dismissing them if it appears a more carefully drafted complaint might state a claim upon which relief can be granted even if the plaintiff never seeks leave to amend."  *Silva v. Bieluch*, 351 F.3d 1045, 1048–49 (11th Cir. 2003) (internal quotation marks omitted).    As set forth above, the court provided such an opportunity—more than once—in this case.

from the Escambia County Jail to TCI in **June 2005** (ECF No. 21 at 16).    Plaintiff

alleges he advised a TCI/FDOC classification officer that he was in "fear for his life"

and safety; yet, in **September 2005**, following a "blood draw," he "collapsed and

had to be revived by (ammonia) smelling [salts]" due to a concussion he sustained

as a result of the collapse (*id.* at 16, 29).    Plaintiff states the TCI/FDOC officer

knew he was in "imminent danger" but failed to protect him (*id.* at 16).    Plaintiff

also alleges he did not receive adequate medical care while confined at TCI (*id*. at

17).

(b)    Charlotte Correctional Institution

Plaintiff's claims against CCI officials stem from his incarceration there

between in or about **May 2007 and December 2008** (ECF No. 21 at 16–17, 19).

Plaintiff complains about the way in which his grievances and other complaints were

handled during that timeframe (*id.* at 17).    He also alleges one CCI officer

threatened him and another, a CCI Sergeant, made false allegations against him—

the latter of which caused other officers to apply chemical agents, which, in turn,

caused injury to Plaintiff, such as vision problems (*id.* at 17–18).    Plaintiff further

claims he was beaten by CCI officers and received inadequate medical care at CCI

(*id.* at 18).    And Plaintiff claims to have permanent injuries from the use(s) of force

against him at CCI (*id.* at 17–18).

The incidents of which Plaintiff primarily complains appear to have occurred at CCI in **June 2007**, **November 2008**, and **December 2008** (*see* ECF No. 21 at 17–19).   However, Plaintiff also references an incident in **October 2010**, relating to the manner in which a complaint was handled by one or more officers at CCI (*see id.* at 12).

(c)     Escambia County (and Inmate Mejia)

Plaintiff's claims against David Morgan, as "Chief Jailer" of the Escambia County Jail, Jail employees, and ECSO employees stem from Plaintiff's incarceration at the Escambia County Jail in or about **January 2005 through June 2005** and again in or about **October 2010 through February 2011** (ECF No. 21 at 12–14, 16, 30).[4]   Plaintiff claims that during the earlier incarceration, he was "cut" by Inmate Francisco Mejia, and he sues both David Morgan and Inmate Mejia for violating his constitutional rights (*see id*. at 30–31).[5]

---

[4] Plaintiff's allegations are confusing.   He indicates he was incarcerated at CCI between May 2007 and December 2008, but he lists some Escambia County defendants in connection with claims that appear to have arisen at CCI during that time frame (*see* ECF No. 21 at 17–18).   Similarly, he raises claims against both Escambia County Jail and CCI defendants in relation to events occurring in October of 2010, but it does not appear he was incarcerated at both institutions in that month.   The ambiguity does not affect the court's recommendation of dismissal, however, because it is clear that all of the Escambia County and CCI-based claims are time barred.

[5] Plaintiff says he was "cut" on October 11, 2005, and he sues Escambia County's "Chief Jailer" in relation to the incident (ECF No. 21 at 30).   Plaintiff's other factual allegations indicate he was transferred from the Escambia County Jail to TCI in June 2005 (*id*. at 16).   It thus appears that the

Plaintiff also complains about the manner in which Jail officials handled, processed, and/or responded to grievances, "complaints," "letters to officials," and the like (ECF No. 21 at 12, 28).   As best the undersigned can discern, Plaintiff reported to Jail officials that he had been sexually assaulted by an inmate named "D. Johnson" in or about **late 2004** and **early 2005**, and he faults ECSO and Jail officials for failing to protect him, ensure his safety, and fully investigate the allegations brought to light in complaints submitted to them in **October 2010** (*id.* at 13–15).

> (d)     Florida Sheriff's Association
>          State Attorney Defendants
>          The State of Florida

Plaintiff appears to have named the FSA (or an individual affiliated with the FSA) as a Defendant due to the FSA's failure to respond to letters and/or complaints he sent during his incarceration at the Escambia County Jail between **October 2010 and February 2011** (ECF No. 21 at 12, 33).[6]   Likewise, Plaintiff faults an Assistant State Attorney (ASA) and an investigator in the same office for failing to

---

assault by Inmate Mejia occurred prior to Plaintiff's transfer to TCI, during his incarceration at the Escambia County Jail.   Again, the ambiguity does not affect the statute-of-limitations analysis.

[6] It appears Plaintiff may assert a claim against FDOC Secretary Inch for the same reason (i.e., the FSA's failure to respond to his complaint) and an Escambia County Jail official who mailed a letter to the FSA, for her failure "to protect and safeguard" legal mail destined for the FSA (*see* ECF No. 21 at 27).   To the extent Plaintiff has asserted such claims, the court notes that Plaintiff indicates these actions occurred in **October 2010** (*id.*).

act upon a related "criminal complaint" mailed to the ASA in **October 2010** (*id*. at 28).   He names as a Defendant "The State of Florida," evidently as the employer of the employees of the State Attorney's Office (*see id.* at 9).

        (e)    Florida State Prison (FSP)

Plaintiff alleges he was transferred from CCI to FSP and arrived at FSP in **March 2011** (ECF No. 21 at 20).   Plaintiff contends that an FSP official issued him a frivolous and "false DR [disciplinary report]" in or about **December 2012**, which ultimately led to Plaintiff's placement in segregated confinement for sixty days (*id.* at 20).   Plaintiff also alleges FSP officials interfered with his legal mail and failed to provide law clerk assistance, as a result of which he was unable to pursue (or effectively pursue) "civil proceedings" and state post-conviction claims and appeals while in confinement (*id.* at 20–21).

        (f)    Charlotte County

Plaintiff states he was transferred to the Charlotte County Jail on **March 29, 2011** (ECF No. 21 at 21).   He claims he "attempted to ascertain the status of his sexual battery complaint," presumably referring to the prior assault that allegedly occurred years prior at the Escambia County Jail, but did not receive a response, despite following up with letters and, **in April 2011**, verbally notifying a Charlotte County Sheriff's Officer of "his situation" (*id.* at 21).   It appears that in **mid-April**

**2011**, Plaintiff received a response advising "that his situation was being addressed by the Escambia County Sheriff's Department" (*id.* at 21–22).   Plaintiff alleges, however, that a grievance sent to Charlotte County Jail officials in **May 2011** went unanswered or otherwise was not resolved to Plaintiff's satisfaction (*see id*. at 12–14).

Next, Plaintiff includes facts regarding some sort of dispute he had with a Charlotte County Jail official in or about **April 2011**, concerning a jail-issued laundry bag (ECF No. 21 at 22–23).   Plaintiff claims he reported the issue to other Jail officials and/or the Charlotte County Sheriff and thereafter was sprayed with chemical agent in retaliation for reporting the incident (*id.* at 22–23).   He alleges the chemical agent injured his eyes (*id*. at 23–24)

Finally, Plaintiff sets forth facts suggesting that state charges, which evidently caused his temporary incarceration in the Charlotte County Jail, were nolle prossed on **May 2, 2012**, and that he was transferred back to FSP on **May 13, 2012**[7] (ECF No. 21 at 24; *see also* ECF No. 21-3 at 12).

(g)   Suwanee Correctional Institution

---

[7] Plaintiff states he was transferred back to FSP on May 13, **2011** (ECF No. 21 at 24), but this appears to be a scrivener's error based on the timing of the events that preceded his transfer back to FSP.   In any event, use of the later date (2012) works in Plaintiff's favor for purposes of the statute-of-limitations analysis.

Plaintiff states he was transferred from FSP to SCI on **February 28, 2013** (ECF No. 21 at 24).   He "attempted to access legal-mail mailout" on **May 2, 2013**, but one or more SCI correctional officers prevented him from doing so and otherwise interfered with his legal mail (*id.* at 24–25).   SCI Officers also allegedly played "mind games" with Plaintiff and sprayed his face with chemical agent—after "us[ing] tape to cover the ventilation holes"—because Plaintiff broke a sprinkler in his cell; apparently, this use of force occurred on **May 2, 2013**, and, Plaintiff claims, injured his eyes (*id.* at 24–25).

        (h)    Miscellaneous Claims

As previously noted, Plaintiff alleges he was sexually assaulted by a cellmate during an earlier incarceration at the Escambia County Jail.   He complains that a "**September 22, 2011** public records request" failed to yield "enough information to locate plaintiff's only cellmate who sexually assaulted him" (ECF No. 21 at 14) (emphasis added).   While not entirely clear, it appears the assault occurred in **2004**, and Plaintiff complains that there is no record of it, explaining that a public records request revealed no such documentation (*id.* at 14).

Plaintiff also claims Defendant FDOC Secretary Inch knew, as early as **2005**, that Plaintiff was in "imminent danger" because Plaintiff reported as much to FDOC correctional or classification officers in **2005**, and the FDOC's Assistant Secretary

(Defendant J. Adams) approved a request for protection in **2007** (ECF No. 21 at 26).

Plaintiff further claims the "**May 2, [2013]** incident" at SCI put FDOC officials on

notice of the need to protect Plaintiff and provide corrective lenses and adequate

treatment for his eye injuries but that these officials failed to act (*id.* at 26) (emphasis

added).   *See also id*. at 29–31 (Plaintiff reiterates or supplements many of the facts

previously stated and alleges FDOC Secretary Mark Inch is liable for the actions of

subordinates that occurred at various correctional institutions in **2005, 2007, 2008,**

**and 2010**).

Plaintiff also asserts as follows:

> Plaintiff is suing [2 officers, agency affiliation unknown, and] ex-Gulf
> C.I. Officer [] Zucci . . . due to their involvement in the stalking,
> harassment and conspiracy to entrap is induced [sic] by their fraudulent
> representation in Detroit, Michigan which is connected to a plot to
> embezzle from an estate that has been established as well as sued, [in
> violation of Plaintiff's rights under the] [F]irst and [F]ifth
> Amendment[s].

(ECF No. 21 at 27).   Plaintiff provides no date on which these alleged actions

occurred (*see id.*), but in a letter attached to his complaint, addressed to the Charlotte

County Sheriff and dated **December 31, 2011**, Plaintiff indicates the matter concerns

"a situation that was initially commenced in Detroit, Michigan in **1999**," purportedly

concerning past sexual relations between Plaintiff and females who later became

employees of the FDOC (*see* ECF No. 21-2 at 20) (emphasis added).   Plaintiff

explains in the letter that officials at several FDOC institutions were informed, via grievances or otherwise, of the Detroit-related matters in **2005, 2006, 2010, 2011**, but failed to respond or failed to respond in the manner Plaintiff desired (*id.*).

(i)    Franklin Correctional Institution (FCI)
(and Inmate Goodman)

Plaintiff alleges Inmate James Goodman struck him with a lock on **February 13, 2017**, while he was confined at FCI (ECF No. 21 at 31).   Plaintiff claims he was transferred to Century Correctional Institution and assaulted again (*id.*).   He contends he should have been, but was not, provided protection (*id.* at 31–32). Plaintiff alleges he was then was transferred to Jefferson Correctional Institution (JCI) (*id.* at 31–32).   Plaintiff takes issue with his placement at JCI, alleging he should have been transferred to a "P.M. [believed to stand for protective management] camp, such as the Northwest Florida Reception Center" (*id.* at 32). He sues FDOC Secretary Inch and Inmate Goodman, claiming both violated his constitutional rights (*id*. at 31–32).

C.    Statement of Claims and Relief Requested

Rather than succinctly stating his claims—i.e., "what rights under the Constitution, law, or treaties of the United States you claim have been violated"— as the complaint form requires (ECF No. 21 at 34), Plaintiff scattered his claims (and

arguments) throughout the lengthy Complaint, primarily in the "Statement of Facts" section (*see id.* at 12–33)—even though the complaint form specifically instructs that no legal arguments or case/statutory citations should be included in that section (*id.* at 12).   Notwithstanding this pleading deficiency, the court has—as best it can—plucked Plaintiff's claims out of the morass that is his Complaint.   Having done so, the court discerns that Plaintiff's claims arise under the First, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution (*id.* at 13–14, 18–20, 23, 26–27, 32–33).   As relief, Plaintiff seeks $300,000 from the "Chief Jailers" for the Escambia County Jail and Charlotte County Jail, $1,000,000 from FDOC Secretary Inch, and "any other relief" this court deems proper (*id*. at 34).

      D.     Statute of Limitations

     All of Plaintiff's claims, except those that arose during or after the incident with Inmate Goodman at Franklin Correctional Institution on February 13, 2017, are barred by the applicable statute of limitations.   Because section 1983 does not contain a specific statute of limitations, section 1988 directs courts to select and apply the most appropriate or analogous state statute of limitations.   Courts should select the state statute of limitations that applies to tort actions for the recovery of damages for personal injury.   *Owens v. Okure*, 488 U.S. 235, 251 (1989).   Once selected, that statute should govern all section 1983 actions arising in that state.   *Id*.

at 275; *see also Jones v. Preuit & Mauldin*, 763 F.2d 1250, 1252 (11th Cir. 1985) (citations omitted).    The applicable statute of limitations in Florida is four (4) years. *Baker v. Gulf & Western Indus.*, 850 F.2d 1480, 1481 (11th Cir. 1988); *see* Fla. Stat. § 95.11(3) (1991).

"Although courts look to state law for the length of the limitations period, the time at which a § 1983 claim accrues is a question of federal law, conforming in general to common-law tort principles."    *McDonough v. Smith*, 139 S. Ct. 2149, 2155 (2021) (internal quotation marks and citation omitted); *see also Brown v. Georgia Bd. of Pardons & Paroles*, 335 F.3d 1259, 1261 (11th Cir. 2003).    "An accrual analysis begins with identifying the specific constitutional right alleged to have been infringed."    *McDonough*, 139 S. Ct. at 2155 (internal quotation marks and citation omitted).    These "principles are meant to guide rather than to control the definition of § 1983 claims," such that the common law serves "more as a source of inspired examples than of prefabricated components."    *Id.* at 2156 (internal quotation marks and citation omitted).    The Eleventh Circuit has held that the statute of limitations begins to run from the date "the facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights."    *Lovett v. Ray*, 327 F.3d 1181, 1182 (11th Cir. 2003) (citation omitted).

As set forth above, Plaintiff commenced this civil rights action on December 16, 2019, and he asserts claims under the First, Fifth, Eighth, and Fourteenth Amendments.    His claims concern alleged improper handling of legal mail; improper processing of grievances; unconstitutional conditions of confinement, including excessive force, failure to protect, and failure to provide adequate medical care; and due process violations.    He also includes allegations relating to the manner in which the State Attorney's Office and State of Florida handled a complaint he submitted.    Excluding the events at FCI (and beyond)—the actions of which Plaintiff complains occurred during his incarceration at the Escambia County Jail, the Charlotte County Jail, and various FDOC institutions between **2004 and 2013**.

It is clear that the facts which would support any cause of action arising from or during Plaintiff's incarceration at these institutions were apparent or should have been apparent to a person with a reasonably prudent regard for his rights by May 2, 2013—the most recent date on which Plaintiff alleges a constitutional violation occurred at any of those facilities (i.e., when SCI officials interfered with Plaintiff's legal mail and used excessive force).    Thus, Plaintiff had until **May 2017** to initiate this action but did not do so until December 2019, more than two years after the statute of limitations ran.    Accordingly, all of Plaintiff's claims, other than those

that arose at FCI (and beyond), are barred by the statute of limitations and thus are due to be dismissed with prejudice.

E.     Remaining Claims (against Inmate Goodman and FDOC Secretary Inch regarding the assault at FCI and Plaintiff's subsequent transfer to JCI, instead of an institution Plaintiff preferred)

To reiterate, Plaintiff alleges Inmate James Goodman struck him with a lock on February 13, 2017, while he was confined at FCI (ECF No. 21 at 31).   He claims he was then transferred to Century Correctional Institution and assaulted again at that institution, even though officers were present (*id*. at 30–31).   Plaintiff was subsequently transferred to JCI instead of a facility/camp of Plaintiff's choosing, such as the Reception and Medical Center (*id*. at 30–32).   Plaintiff sues Inmate Goodman in his personal capacity and Secretary Inch in his official capacity, claiming each violated his due process rights and rights under the Eighth Amendment (*id*. at 31–32).

1.     Inmate James Goodman

A viable claim under 42 U.S.C. § 1983 requires a plaintiff to establish two essential elements: (1) the conduct complained of was committed by a person acting under color of state law; and (2) the conduct deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds, Daniels v.*

*Williams*, 474 U.S. 327 (1986); *Griffin v. City of Opa-Locka*, 261 F.3d 1295, 1303 (11th Cir. 2001).   A private citizen, including an inmate, plainly does not act under the color of law for purposes of section 1983.   Plaintiff, therefore, has failed to state a claim on with relief may be granted as to Inmate Goodman.

2.   FDOC Secretary Mark Inch

(a)   As noted *supra*, Plaintiff asserts claims against Defendant Inch in his official capacity.   As the court previously advised Plaintiff (*see* ECF No. 14 at 7–9), a suit against a person in his or her official capacity is to be treated as a suit against the entity the person represents.   *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985).   Here, Defendant Inch represents the FDOC; hence, Plaintiff's claims against Inch in his official capacity are barred.   Indeed, "[a]bsent a legitimate abrogation of immunity by Congress or a waiver of immunity by the state being sued, the Eleventh Amendment is an absolute bar to suit by an individual against a state or its agencies in federal court."   *Gamble v. Fla. Dep't of Health and Rehab. Servs.*, 779 F.2d 1509, 1511 (11th Cir. 1986); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989) ("Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits unless the State has waived its immunity,

or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity.") (citations omitted)).    A suit against a state employee in his or her official capacity is deemed a suit against the state for Eleventh Amendment purposes.    *Will*, 491 U.S. at 71; *Gamble*, 779 F.2d at 1512 (holding the Eleventh Amendment "will bar damage awards against state officers sued in their official capacities in suits brought in federal court pursuant to 42 U.S.C.A. § 1983."). Plaintiff's claim for $1,000,000 in damages against Defendant Inch in his official capacity thus fails as a matter of law.

(b)    Additionally, to the extent Plaintiff seeks to hold FDOC Secretary Inch liable for the acts of his subordinates, which appears to be the case, Plaintiff has failed to state a claim for any other relief he may seek.

Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior.    *See Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978) (finding no vicarious liability for a municipal "person" under 42 U.S.C. § 1983).    "Because vicarious liability is inapplicable to [] § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."    *Iqbal*, 556 U.S. at 676.    Under *Iqbal*, "each Government official, his or her title notwithstanding, is only liable for his or her own

misconduct."   *Id.* at 677. "[S]upervisors are liable under [section] 1983 'either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional violation.'"   *Myers v. Bowman*, 713 F.3d 1319, 1328 (11th Cir. 2013) (quoting *Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir. 2010)). Facts sufficient to establish a causal connection include those "which support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." *Keating*, 598 F.3d at 762 (internal quotation marks omitted).   The factual allegations must plausibly show that the supervisory official acted with the same mental state required to establish a constitutional violation against his subordinate. *See Franklin v. Curry*, 738 F.3d 1246, 1250 (11th Cir. 2013).

Further, merely denying a grievance without personally participating in the unconstitutional conduct brought to light by the grievance is insufficient to establish § 1983 liability.   *See Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) ("[D]enial of a grievance, by itself without any connection to the violation of constitutional rights alleged by plaintiff, does not establish personal participation under § 1983."); *Grinter v. Knight*, 532 F.3d 567, 576 (6th Cir. 2008); *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (refusing to impose liability under § 1983

on supervisory official who denied administrative grievance and otherwise failed to act based on information contained in the grievance); *Weaver v. Toombs*, 756 F. Supp. 335, 337 (W.D. Mich. 1989) (holding that prisoner failed to state § 1983 claim against supervisory officials, where prisoner merely alleged the officials denied his grievance and did not allege they were personally involved in the alleged misconduct), *aff'd*, 915 F.2d 1574 (6th Cir. 1990); *see also, e.g., Brown v. Comerford*, No. 3:13cv572/LAC/CJK, 2014 WL 3586257, at *5 (N.D. Fla. July 21, 2014) ("[M]erely denying a grievance, without personally participating in the unconstitutional conduct . . . is insufficient to establish § 1983 liability."); *Swift v. Tifft*, No. 3:12cv171/RV/CJK, 2013 WL 5913796, at *9 (N.D. Fla. Oct. 31, 2013) (same).

Reading Plaintiff's allegations in a liberal fashion, as this court must, Plaintiff appears to allege that Secretary Inch is liable for the acts of his subordinates due to a history of widespread abuse within the FDOC (*see, e.g.,* ECF No. 21 at 32). Alternatively, Plaintiff appears to suggest liability based on Inch's participation in the grievance process at the appeals level and/or Inch's "knowledge of the [FDOC's] assistant secretary's approvals [and failure] to stop the imminent danger" (ECF No. 21 at 32).

With respect to the alleged "history of widespread abuse," Plaintiff merely includes a "formulaic recitation of a cause of action," devoid of specifics, other than pointing to the various complaints Plaintiff submitted regarding specific instances of (alleged) constitutional violations that occurred at various FDOC institutions. This is insufficient to state a viable claim against Secretary Inch.    *Bell Atl. Corp.*, 550 U.S. at 555.    Likewise, Secretary Inch cannot be held liable based on participation in the grievance process.   As explained above, merely denying a grievance without personally participating in the unconstitutional conduct brought to light by the grievance is insufficient to establish § 1983 liability.   *See, e.g., Gallagher v. Shelton*, 587 F.3d at 1069 (10th Cir. 2009).[8]

## III.   CONCLUSION

For the reasons set forth above, this action is subject to dismissal due to Plaintiff's maliciousness and abuse of the judicial process and for failure to state a viable claim for relief against the Defendants.

Accordingly, it is respectfully **RECOMMENDED** that:

---

[8] To the extent Plaintiff seeks damages from the FDOC, the FDOC is not a "person" subject to suit under 42 U.S.C. § 1983.   *Will*, 491 U.S. at  64–71.

1.     The court **DISMISS this action** as malicious and abusive of the judicial process and for failure to state a claim on which relief can be granted, pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and (ii).

2.     That the clerk be directed to close the file.

At Pensacola, Florida this 12th day of October 2021.

*/s/ Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen days of the date of the Report and Recommendation.  Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.  An objecting party must serve a copy of its objections on all other parties.  A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**